* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pretrial Agreement as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above.
4. The employee's average weekly wage is $278.77 per week.
5. The employee sustained an injury on or about November 22, 1999 with the exact date to be determined by the Industrial Commission.
6. The injury arose out of and in the course of employment and is compensable.
7. The employee received temporary total disability as a result of this injury during the following time periods (payment subject to verification with payment screen): November 23, 1999 through September 18, 2000; November 13, 2000 through February 2001; October 15, 2001 through December 23, 2001; February 11, 2002 through February 14, 2002; and March 14, 2002 through February 9, 2003.
8. At the hearing, the parties submitted the following stipulated exhibits: (1) Pre-trial Agreement; (2) medical records; (3) Industrial Commission forms; (4) Job Description and physical requirements of job; (5) correspondence regarding plaintiff's termination; (6) surveillance reports; (6)(a) and (b) surveillance tapes; (7) payment screens; (8) plaintiff's answers and responses to defendant's interrogatories; and (9) defendants' answers and responses to plaintiff's interrogatories.
 * * * * * * * * * * *
Based on the competent evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed as a reservations agent at the time of her injury on November 22, 1999 when she slipped on some debris and suffered an injury to her right ankle. Plaintiff's job as a reservations agent is sedentary in nature and allows positional changes between sitting and standing as needed.
2. Plaintiff's injury was accepted as compensable on a Form 60 and she received temporary total disability compensation during various time periods following the date of injury. Plaintiff's most recent return to work occurred on February 10, 2003. On that date, Dr. Laut indicated that plaintiff would require transportation secondary to her medications. During his deposition, Dr. Laut testified that this restriction was put in place based upon plaintiff's report to him regarding the effects of the medications on her. He noted that the employer agreed to provide transportation to plaintiff to facilitate her return to work.
3. Since no modifications were necessary to plaintiff's position and Dr. Laut had released her to return to work at full duty work, a Form 28 was filed documenting plaintiff's return to work on February 10, 2003. However, on February 10, 2003, plaintiff left work after several hours, reporting to the employer that she was having problems with the computer screen due to the medications she was taking. Following that date, the employer requested medical documentation to support her ongoing leave of absence. Plaintiff failed to provide the requested documentation and was ultimately terminated on February 27, 2003, pursuant to the employer's policies. Plaintiff's decision to leave work without a medical excuse taking her out of work and her subsequent failure to provide medical documentation to support her contention that she could not work, constituted a constructive refusal of suitable employment.
4. Plaintiff submitted a Form 28U dated April 23, 2003, indicating an unsuccessful trial return to work two months after her termination from employment. The Form 28U purported to retroactively establish plaintiff's disability to the date she left work on February 10, 2003. However, since Dr. Laut had issued a note in March 2003 releasing plaintiff to return to work in a sedentary position, Dr. Laut's intent in signing the April 23, 2003, Form 28U was unclear.
5. With respect to the Form 28U, Dr. Laut testified during his deposition that the signature on the Form 28U was his, but he did not remember signing the form and at the time he signed the Form 28U, the primary problem addressed was plaintiff's report to him of how the medications were affecting her. Dr. Laut testified that he did not treat plaintiff specifically for the symptoms resulting from her use of the medications and he was not in a position to say whether plaintiff could, or could not perform her job based upon her medications. Further, he testified that from his perspective as a podiatrist, plaintiff could safely return to work. Dr. Laut admitted that any opinion he rendered regarding plaintiff's ability to work was based upon her subjective reports to him, as there was no objective evidence to support her ongoing disability. Dr. Laut testified that most of his patients adjusted to their medication levels over time and were fully functioning individuals.
6. Dr. Boone performed two independent medical examinations (IME's) in this case. Prior to each IME, a complete functional capacity evaluation (FCE) was performed. The first FCE revealed that plaintiff was capable of returning to her job position with no modifications. Dr. Boone noted that the FCE was described as invalid due to the inconsistent effort and a lack of physiological data; therefore, it demonstrated the minimum amount someone was capable of performing and that the person may actually be capable of performing at a higher level. Dr. Boone subsequently evaluated plaintiff on March 19, 2003, and opined that plaintiff had reached maximum medical improvement and could return to her job, full duty at that time. With respect to additional medical treatment, he recommended that plaintiff be referred to a pain clinic for further treatment.
7. A second FCE was completed on March 23, 2004, and showed that plaintiff was capable of working at the light to medium level, which was an increase from the prior FCE. The second FCE was also noted to be invalid due to plaintiff's inconsistent effort, indicating that the results represented the minimum amount plaintiff was capable of performing. Dr. Boone saw Plaintiff on April 14, 2004, for an evaluation after the second FCE. He was of the opinion that no further orthopaedic care was needed and again recommended treatment at a pain clinic. He also indicated that plaintiff remained capable of performing her job duties.
8. Dr. Laut testified that plaintiff had been evaluated at a pain clinic and the pain clinic had advised they had no further treatment to offer plaintiff.
9. Surveillance was obtained of plaintiff in November 2002 and December 2003. Plaintiff was receiving temporary total disability compensation in November 2002 and in December 2003 she was alleging that she was totally disabled, although she was not receiving benefits at that time. The surveillance video documents plaintiff walking around without any type of limp and without any type of assistant device and bending over and picking up objects without any difficulty. Dr. Boone only reviewed several minutes of the videotape; however, he testified that was all he needed to see. He reiterated that it remained his opinion that plaintiff was capable of returning to her pre-injury position.
10. Dr. Boone's opinions on plaintiff's disability are given greater weight than those of Dr. Laut. Both Dr. Boone and Dr. Laut were of the opinion that plaintiff was physically capable of performing her job duties with Defendant-Employer. With respect to Dr. Laut's opinion concerning ongoing disability related to plaintiff's medication usage, he admitted that he is not qualified to render an opinion on whether plaintiff's medication prevented her from performing her job.
11. As of March 19, 2003, plaintiff had reached maximum medical improvement and was capable of working full time in her employment with Defendant-Employer. No weight is given to the Form 28U signed by Dr. Laut, as plaintiff did not make a good faith effort to return to work and Dr. Laut signed the Form 28U based solely on plaintiff's representation to him that she could not work. The greater weight of the evidence establishes that plaintiff was capable of working. No doctor had written her out of work at the time she left on February 10, 2003 and Defendant-employer had made reasonable efforts to accommodate her subjective complaints.
12. Plaintiff's testimony at hearing fails to support her claim for ongoing disability. Plaintiff testified that she has not attempted to locate further employment since the date of her termination, even though in her own opinion she has 15 to 20 good days a month and she is capable of working 4 hours per day. After attempting to return to work for Defendant-employer for several hours, Plaintiff decided on her own that she is disabled, despite a lack of medical evidence to support her contention.
13. There is insufficient evidence of record to determine by its greater weight that plaintiff has any disability resulting from her injury of November 22, 1999.
14. As a result of her injury, plaintiff has sustained a 14% permanent partial disability to her leg. Greater weight is given to the 14% rating to the leg assigned by Dr. Boone over the 30% rating to the foot by Dr. Laut.
 * * * * * * * * * * *
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove that she remains disabled from work due to her injury on November 22, 1999. Plaintiff has presented sufficient evidence to establish entitlement to permanent partial disability for the 14% rating to her leg. N.C. Gen. Stat. §§ 97-2(9); 97-29
and 97-31.
2. On February 10, 2003, plaintiff unjustifiably refused employment suitable to her capacity and is not entitled to compensation during the continuance of such refusal. By March 19, 2003, plaintiff reached maximum medical improvement and was capable of working full duty, without restrictions. Her job was sedentary. Plaintiff refused suitable employment and was terminated. Plaintiff failed to establish that she was incapable of finding employment in the competitive job market due to her injury after March 19, 2003.
3. Plaintiff has also failed to prove that she requires further medical treatment related to her injury of November 22, 1999. N.C. Gen. Stat. §97-25.
 * * * * * * * * * * *
Based on the foregoing findings of facts and conclusions of law the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim for additional temporary total disability must be, and the same is hereby DENIED.
2. Defendant shall pay to plaintiff permanent partial disability compensation at the rate of $185.83 per week for 28 weeks for the 14% impairment rating to her leg.
3. Plaintiff's attorney shall be awarded a 25% attorney fee which shall be deducted from the compensation due plaintiff and paid directly to plaintiff's attorney.
4. Defendant shall pay for all medical treatment related to plaintiff's injury when bills are submitted according to Industrial Commission procedures.
5. Defendant shall pay the costs.
This the __ day of February 2006.
 S/_________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_________________ LAURA K. MAVRETIC COMMISSIONER
 S/_________________ DIANNE C. SELLERS COMMISSIONER